UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GARY E. KIRBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:13-CV-373 |
| ) | (MATTICE/SHIRLEY) |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 11, 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13, 14]. Plaintiff Gary E. Kirby seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act on January 21, 2010, alleging disability since September 1, 2009, due to back and rib problems and chronic obstructive pulmonary disease ("COPD"). His application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ Jack B. Williams, in Knoxville, Tennessee, on September 27, 2011. The Plaintiff

1

was present and testified. The ALJ issued an unfavorable decision on November 9, 2011, finding the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease; degenerative disc disease; and residuals from rib fractures (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *light work* as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant must avoid concentrated exposure to fumes, strong odors, excessive dust and pulmonary irritants.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on December 27, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

2

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 20-26] (emphasis in the original).

## II.   DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses."  Wilson, 378 F.3d at 546-47.  Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard.  See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits.  Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff essentially raises a single allegation of error:  that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider how the Plaintiff's continuous use of supplemental oxygen affected his ability to work.  [Doc. 12 at 8].  The Plaintiff cites to the Court numerous treatment notes evincing his continuous need for supplemental oxygen since February 1, 2011, and asserts that such usage could be expected to last at least twelve months.  [Id.].  Because the ALJ failed to make any findings regarding the Plaintiff's oxygen use, the Plaintiff asserts that the ALJ's conclusions regarding the Plaintiff's residual

functional capacity ("RFC"), as well as the ALJ's step five determination that other jobs existed in the national economy that the Plaintiff is capable of performing, is not supported by substantial evidence. [Id.].

The Commissioner asserts that the Plaintiff failed to meet his burden of demonstrating that his oxygen use was an impairment within the meaning of the Social Security Act and that substantial evidence supports the ALJ's determination that jobs existed in the national economy that the Plaintiff is capable of performing. [Doc. 14 at 5]. The Commissioner argues that the record is void of any indication that the Plaintiff required oxygen 24 hours a day. [Id.]. Moreover, the Commissioner maintains that even assuming the ALJ erred by not discussing the Plaintiff's oxygen use, the error was harmless because the Plaintiff could not satisfy the duration requirement as of the date the ALJ rendered his decision. [Id. at 7].

V.   ANALYSIS

The record demonstrates that while the Plaintiff used supplemental oxygen for an extended period, the Plaintiff's dependency and frequency of use is unclear.

During the September 2011 hearing, the ALJ acknowledged that the Plaintiff was wearing a supplemental oxygen device in which the Plaintiff received oxygen via nasal cannula. [Tr. 37]. The Plaintiff testified that among some of the impairments he suffered from, he experienced COPD and acute respiratory failure. [Tr. 44-45]. As of February 1, 2011, after a trip to the emergency room for breathing problems, the Plaintiff stated that he was prescribed the use of oxygen 24 hours a day and was further directed to follow-up with his primary care physician. [Tr. 45]. The Plaintiff testified that after following-up with his primary care provider Cherokee Health Systems the following month, he remained on oxygen. [Tr. 46]. The Plaintiff

7

explained that continuing his oxygen use "helped a lot" because "I'm not as out of air as bad as I would be if I didn't have it." [Tr. 46-47].

In the disability determination, while the ALJ discussed the Plaintiff's COPD and other lung problems, the Plaintiff's use of oxygen was only briefly mentioned when the ALJ observed that treatment notes from Cherokee Health Systems in October 2011, provided that the Plaintiff "was using oxygen via nasal cannula at the time." [Tr. 23].

The Plaintiff submits that the medical evidence of record demonstrates that as of February 1, 2011, nine months prior to the ALJ's decision, he was directed to use supplemental oxygen on a continuous basis. [Doc. 12 at 12-13]. In particular, the Plaintiff presented to the emergency room at the University of Tennessee Memorial Hospital in February 2011, for shortness of breath and hypoxia. [Tr. 435]. After a chest x-ray revealed the Plaintiff was suffering from pneumonia, the hospital determined that the Plaintiff qualified for at home oxygen therapy and made arrangements for the Plaintiff to begin the treatment. [Id.]. The Plaintiff was instructed to wear the oxygen 24 hours a day until he was evaluated by his primary care physician, which he was directed to visit within 10 days from his emergency room discharge. [Id.]. It appears that the Plaintiff did not see his primary care provider until a month later when he presented to Cherokee Health Systems on March 9, 2011. [Tr. 449]. Treatment notes reveal that the Plaintiff was recommended that he continue his oxygen use, which was currently notated to be between 2L-2.5L. [Id.]. Treatment notes from May and June 2011 document that the Plaintiff continued using oxygen. [Tr. 454-56, 458]. The following month, the Plaintiff was examined at University Pulmonary and Critical Care after being referred by his primary care provider for the purpose of obtaining further evaluation of progressive dyspnea, abnormal chest imaging, and prior hospitalization for pneumonia. [Tr. 449, 500-02]. Treatment notes from the

8

pulmonary consultation notated that the Plaintiff had been using supplemental oxygen since March 2011, and it was recommended that the Plaintiff continue to do so at this stage of his medical care. [Tr. 500, 502]. Finally, in October 2011, the Plaintiff returned to Cherokee Health Systems where it was again noted that he continued using oxygen at 2.5 1/minute, but was using more when he exerted himself. [Tr. 543]. As a result, the Plaintiff requested that his oxygen intake be increased to 3.0 1/minute. [Id.]. Treatment notes recommended that he continue his oxygen use at 2.5 1/minute until he could be approved by his insurance for an increase of 3.0 1/minute. [Tr. 544].

The Commissioner correctly points out that none of the medical records cited by the Plaintiff contain any indication as to the frequency the Plaintiff was required to use oxygen. [Doc. 14 at 5-6]. With the exception of the Plaintiff's emergency room visit on February 1, 2011, in which the Plaintiff was instructed to use oxygen 24 hours a day over the next 10 days, all other treatment notes fail to identify whether the Plaintiff was using, or was medically required to use, oxygen 24 hours a day. [Id.]. Moreover, on March 30, 2011, when the Plaintiff presented to the emergency room for a second time that month for of a broken rib and pneumonia, there was no documentation in the treatment notes that the Plaintiff was using oxygen or that he was recommended to use oxygen. [Tr. 480-82]. Likewise, in May 2011, when the Plaintiff visited the emergency room for ear pain, treatment notes again were void of any indication that the Plaintiff was using oxygen. [Tr. 517]. The Commissioner also highlights the fact that the treatment notes from the Plaintiff's pulmonary consultation only notated that the Plaintiff was using oxygen as a supplement, rather than on a continuous basis. [Tr. 500].

Based upon the foregoing, the Court finds that the parties' account of the medical evidence presents a conflict in the evidence that is best resolved by the ALJ, not the Court. See

9

Walters, 127 F.3d at 528.  While it is unclear the role supplemental oxygen played in the Plaintiff's daily life, what is clear is that the Plaintiff did depend on oxygen at least to some extent.  Based upon the undeveloped record, the Court would have to speculate, which it is not permitted to do, whether the Plaintiff's oxygen use affects his RFC or the number of jobs that exist in the national economy that the ALJ found the Plaintiff was capable of performing.

The ALJ made no specific finding regarding the Plaintiff's use of supplemental oxygen or whether the Plaintiff was oxygen-dependent.  If the lack of discussion was based upon the fact that the ALJ did not believe the Plaintiff's oxygen use constituted any kind of impairment or limitation, the ALJ had a duty to explain as much.  In assessing the Plaintiff's RFC, the ALJ is charged with considering "all of the relevant evidence in the case record," such as "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (1996); see also Rudd v. Comm'r of Soc. Sec., No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Sept. 5, 2013) (holding that an ALJ is responsible for determining a plaintiff's RFC after reviewing all the relevant evidence in the record).  Without any analysis by the ALJ discussing the necessity and frequency the Plaintiff depended on supplemental oxygen, the Court cannot say that the Plaintiff's RFC is supported by substantial evidence.  See Pendleton v. Comm'r of Soc. Sec., 1:10-CV-650, 2011 WL 7070519, *6 (S.D. Ohio Dec. 23, 2011) (remanding the case based on the ALJ's failure to address the plaintiff's oxygen use as it was unclear from the record whether the plaintiff used oxygen only at night for sleep apnea or on a regular and sustained basis during the day) adopted by, 1:10CV650, 2012 WL 174654, at *1 (S.D. Ohio Jan. 20, 2012).

The ALJ's failure to address the Plaintiff's oxygen use cannot be said to be harmless as

argued by the Commissioner. The Commissioner maintains that even if the evidence did show that the Plaintiff required supplemental oxygen 24 hours a day between February 2011 and the date of the ALJ's decision, the Plaintiff's use does not satisfy the 12 month duration requirement as set forth by the regulations. [Doc. 14 at 7]. However, the regulations require that an impairment last or be *expected to last* for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. There is no requirement that the 12 month period be met prior to the ALJ rendering a decision. Whether the Plaintiff's supplemental oxygen use satisfies the regulation's duration requirement is likewise unclear from the record and, therefore, requires resolution by the ALJ.

This case is unlike Tooley v. Astrue, 3:10-CV-11, 2011 WL 588065, at *5 (E.D. Tenn. Jan. 19, 2011) adopted by, 3:10-CV-11, 2011 WL 587147, at *1 (E.D. Tenn. Feb. 10, 2011) which is relied upon by the Commissioner. [Doc. 14 at 7]. In Tooley, the ALJ determined that the plaintiff's use of supplemental oxygen for a 10 month period prior to the ALJ's decision did not meet the duration requirement and, thus, the plaintiff's oxygen use did not constitute a severe impairment. Id. The court found that the ALJ's determination was supported by substantial evidence because there was no evidence in the record indicating that the plaintiff's oxygen use would last 12 months, the plaintiff's oxygen use was only on an occasional basis, and the plaintiff's claim that using oxygen would interfere with her work was solely based upon her subjective allegations rather than objective medical evidence. Id. Here, however, the ALJ made no findings regarding the Plaintiff's supplemental oxygen use. Therefore, the Court is precluded from undertaking any meaningful substantial evidence review as it relates to the Plaintiff's oxygen use. Rather, the proper review for the Court at this juncture of the case is whether upon remand, the ALJ could arrive to a different conclusion had he performed a proper analysis regarding the Plaintiff's oxygen use. See Wilson, 378 F.3d at 546-47. Indeed, the Court finds

11

that the ALJ could.

To be sure, case law demonstrates that using supplemental oxygen can impact one's ability to perform work. See Andrade v. Astrue, 2:11-CV-140, 2012 WL 3647435, at *5 (E.D. Tenn. Mar. 6, 2012) (recounting vocational expert testimony which provided that the use of oxygen would severely reduce the light and sedentary job basis based upon the hypothetical posed by the ALJ) adopted by, 2:11-CV-140, 2012 WL 3647643, at *1 (E.D. Tenn. Aug. 23, 2012); Towson v. Astrue, CIV.A. 11-1146, 2012 WL 4009533, at *5 (W.D. Pa. Sept. 12, 2012) (observing vocational expert testimony that the plaintiff could perform other jobs in the economy "so long as the use of a portable oxygen tank does not interfere with accepted levels of productivity"); Nemun v. Astrue, 10-C-175, 2011 WL 1113359, at *4 (E.D. Wis. Mar. 24, 2011) (finding that while the record did "not explain what taking oxygen 'five times a day' entails, [] it is likely that such a procedure would seriously interfere with one's job"); Laux v. Astrue, CV-09-1320-PHX-DGC, 2010 WL 3719234, at *6 (D. Ariz. Sept. 15, 2010) (noting that "[t]he vocational expert stated that if Plaintiff needed continuous oxygen treatment, such treatment would eliminate Plaintiff's ability to do even light work—which includes all the jobs that the vocational expert had stated Plaintiff otherwise could do").

Based upon the foregoing, the Court finds that the ALJ erred by failing to provide any discussion regarding the Plaintiff's use and need for supplemental oxygen. As a result, the Court finds that the Plaintiff's RFC and the ALJ's step five determination is not supported by substantial evidence. Accordingly, the Court will recommend that this case be remanded to the ALJ to evaluate the Plaintiff's alleged oxygen dependency, including obtaining additional medical evidence and opinions. The ALJ may obtain vocational expert testimony as well if needed.

## VI. CONCLUSION

Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] be **GRANTED** and that the Commissioner's Motion for Summary Judgment [Doc. 13] be **DENIED**. The Court recommends that this case be **REMANDED** to the ALJ to determine: (1) the necessity and frequency the Plaintiff used supplemental oxygen by obtaining an updated medical exam and report which describes the frequency and duration of oxygen use; (2) whether the usage meets the regulation's duration requirement; and (3) what affect, if any, the usage has on the Plaintiff's ability to engage in gainful employment.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).